| | | |
|---|---|---|
| GEORGE DAVID SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:13-CV-332-TAV-CCS |
| | ) | |
| BELK, INC. and | ) | |
| BELK DEPARTMENT STORES, LP, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OPINION

This civil action is before the Court on plaintiff's Motion to Remand [Doc. 9], to which defendants responded [Doc. 10], and defendants' motion for summary judgment [Doc. 11], to which plaintiff responded [Doc. 18] and defendants replied [Doc. 19]. The Court has thoroughly considered the arguments of the parties, the relevant documents and exhibits, and the controlling law. For the reasons stated herein, plaintiff's motion to remand [Doc. 9] will be **DENIED**, and defendants' motion for summary judgment [Doc. 11] will be **GRANTED**.

**I. Background**

Plaintiff, who is a resident of Tennessee, began his employment with Parks-Belk, a predecessor to defendants, on October 1, 1965, and worked in its Kingsport, Tennessee store until that store closed on June 17, 1995, retiring roughly two weeks later on June 30, 1995 [Docs. 9-1 ¶¶ 1, 7, 10-1 ¶ 4]. Defendant Belk, Inc. is the successor-in-interest to Parks-Belk, where plaintiff was employed, and the parent company to Belk Stores

Services, Inc., which administers the pension plan at issue in this action ("Plan Administrator") [Doc. 10-1 ¶¶ 1, 4].  It is somewhat unclear how defendant Belk Department Stores, LP is related to Belk, Inc. or the Plan Administrator, if at all.[1]  In any event, Belk, Inc. is a Delaware corporation with its principal office in Charlotte, North Carolina, and Belk Department Stores, LP is a North Carolina limited partnership with its principal office in Charlotte as well [Doc. 3-1 pp. 16–18].  Both defendants are registered to do business in Tennessee [*Id.*].

In July 1996, plaintiff completed an "Application for Pension Benefits" in which he selected a pension plan through which he would receive a monthly benefit payment as a result of his long-time employment with Parks-Belk [Doc. 9-1 ¶ 2].  This pension plan ("Plan") was established on January 1, 1969, by the Plan Administrator, which has administered the Plan since that date for the purpose of providing retirement income to defendants' employees, and has been exclusively funded by employer contributions [Doc. 10-1 ¶¶ 1, 6–7].  The Plan is governed by a supporting document ("Plan Document") that is distributed to defendants' employees upon request, and which sets forth in detail the Plan's terms, benefits, beneficiaries, source of financing, and procedures [*Id.* ¶ 7–8].

When plaintiff completed his application for pension benefits on July 10, 1996, he selected a 100 percent "joint-and-survivor payment option" ("J&S Option"), which meant that in exchange for a lesser monthly benefit, plaintiff's designated beneficiary would receive 100 percent of the monthly benefit payment plaintiff received for the remainder

---

[1] Defendants aver that "Belk Department Stores LP has no role in the administration of benefits" [Doc. 19].

2

of the beneficiary's lifetime if plaintiff predeceased the beneficiary [Docs. 9-1 ¶ 4, 10-4]. The default joint-and-survivor payment option was the 50 percent option under which the beneficiary would receive 50 percent of the deceased employee's monthly benefit for the remainder of the beneficiary's lifetime. [Docs. 9-1 ¶ 4, 10-1 ¶ 11]. Each month since July 1996, plaintiff has received his monthly benefit payment [Doc. 9-1 ¶¶ 4, 8].

In July 1996, plaintiff was married to Joyce Marie Smith ("J.M. Smith") and he designated her as his beneficiary on his application for benefits [*Id.* at ¶ 5, Doc. 10-4]. On the application, J.M. Smith could have signed "I hereby consent to my spouse's designation of another beneficiary to receive such death benefits," but she did not, and there is no other signature [Doc. 10-4]. On November 25, 2000, J.M. Smith passed away [Doc. 3-1 p. 5].

On June 2, 2001, plaintiff married Loye Anne Pearson Smith ("L.A.P. Smith") and he now seeks to substitute her as his beneficiary under the Plan [*Id.* at 5–6]. Plaintiff asserts that he is "paying for [the right to assign his beneficiary rights to L.A.P.] each and every month" [Doc. 9-1 ¶ 6]. Plaintiff contacted defendants or the Plan Administrator and attempted to assign his beneficiary rights to L.A.P. Smith, but they have refused, citing the terms of the Plan Document [*Id.*, Doc. 10-1 ¶ 20].

Section 1.7 of the Plan Document designates the Plan participant's "Benefit Commencement Date" as "[t]he first day of the first month for which a retirement benefit is payable to the Participant" [Doc. 11-2 p. 11]. For plaintiff, this was July 1, 1996 [Doc. 10-1 ¶ 13]. Section 4.7(a) of the Plan Document states that the plan participant may

3

change his or her designated beneficiary by filing the proper documents, but that "[t]o be effective, each designation or revocation [of a beneficiary] must be . . . signed and filed . . . before the Participant's Benefit Commencement Date" [Doc. 11-2 p. 37].

According to defendants, the reasoning behind this restriction is that "the pricing and determination of the monthly benefit amount are made on or around the 'Benefit Commencement Date,' [and thus] allowing [beneficiary] changes [based on changes in the participant's personal circumstances] would create adverse actuarial results" [Doc. 10-1 ¶ 20]. An employee for a subsidiary of the Plan Administrator offers the example that, if after-the-fact changes were allowed, "a participant whose 'Spouse' becomes terminally ill would presumably change to a larger lifetime benefit for the participant" [*Id.* ¶ 20]. Accordingly, when plaintiff requested that his beneficiary be changed to L.A.P. Smith, the Plan Administrator did not allow such a change because the Plan Document does not permit plaintiff to change his beneficiary after his Benefit Commencement Date [*Id.* ¶ 21]. To this end, "[t]he Plan Document gives the Plan Administrator the power to construe the Plan and to decide all questions arising under the Plan" [*Id.* ¶ 9].

After the Plan Administrator refused to allow plaintiff to change his beneficiary, plaintiff filed a complaint in the Chancery Court for Knox County, Tennessee, on May 3, 2013 [Doc. 3-1 p. 2]. In his complaint, plaintiff states that defendants are violating the Tennessee Consumer Protection Act ("TCPA") by holding themselves out to the public as simply "Belk," without any corporate descriptors, and that defendants have engaged in

4

"unfair or deceptive acts" in administering the Plan [*Id.* at 5, 8]. As a result, plaintiff demanded "damages in a sum not less than Twenty-five Thousand Dollars ($25,000.00) representing the value of his pension rights under his pension contract and his present wife's life expectancy," treble damages under the TCPA, attorneys' fees, and costs [*Id.* at 9]. Defendants removed the action to this Court on June 13, 2013, asserting that the action is removable under 28 U.S.C. § 1441(a) on two grounds: (1) because the Employee Retirement Income Security Act ("ERISA") completely preempts plaintiff's purported state law claims, rendering the action removable based on 28 U.S.C. § 1331 jurisdiction, and (2) because it involves completely diverse parties and an amount in controversy in excess of $75,000, giving this Court original jurisdiction pursuant to 28 U.S.C. § 1332(a) [Doc. 1 ¶¶ 21–22].

Plaintiff subsequently filed a motion to remand this action to state court, citing in support his assertion that ERISA does not preempt his claims because: (1) that legislation was passed after plaintiff began working for Parks-Belk and therefore after the "contract and privity" between the parties; (2) the matter of diversity is "questionable" because defendants were formed after 1996, have places of business in Tennessee, and are registered to do business here; and (3) the amount in controversy in plaintiff's complaint is only $25,000 because the treble damages are sought as a penalty, not as part of the amount in controversy, though plaintiff also notes in his motion that the amount in controversy is "at least $28,000" [Doc. 9]. Plaintiff asserts his complaint is based in Tennessee contract law and upon the provisions of the TCPA and should thus be

5

remanded to state court [*Id.*]. Defendants contemporaneously filed a response to the motion to remand and a motion for summary judgment, reasserting that ERISA preempts plaintiff's state-law claims and that diversity jurisdiction exists, adding that under ERISA, defendants are entitled to judgment as a matter of law [Docs. 10, 11].

Plaintiff responded to defendants' motion for summary judgment by reiterating his previous arguments in favor of remanding this action to state court and liability on defendants' part under the TCPA and Tennessee contract law [Doc. 18]. Plaintiff further asserts that: (1) "it has not been established . . . *who the Defendant really is*" given that there is not a corporate entity named simply "Belk," which is how defendants' stores hold themselves out to the public in Tennessee; (2) the blank signature line on plaintiff's application for pension benefits below the phrase "I hereby consent to my spouse's designation of another beneficiary" implies that defendants allow such changes; (3) if the defendants were forced to allow plaintiff to substitute his beneficiary, the amount in controversy would be $0; and (4) plaintiff contracted for the right to change his beneficiary [*Id.*]. Defendants replied by citing case law supporting the proposition that ERISA preempts plaintiff's state-law causes of action, contending that it is well established who defendants are and that they are not responsible for administering the Plan, pointing out that participants in the Plan "*are* entitled to change their beneficiaries . . . before the participant's [Benefit Commencement Date]," and submitting that plaintiff does not have the right under the Plan Document to change his beneficiary [Doc. 19].

6

## II. Analysis

The Court first addresses plaintiff's motion to remand. Because the Court declines to grant this motion, the Court then considers defendants' motion for summary judgment.

### A. Motion to Remand

As a general matter, "an action may be removed from state court to federal court only if a federal district court would have original jurisdiction over the claim in suit." *Jefferson Cnty. v Acker*, 527 U.S. 423, 430 (1999) (citing 28 U.S.C. § 1441(a)). "To remove a case as one falling within federal-question jurisdiction, the federal question ordinarily must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal." *Id.* at 430–31 (citation omitted). This is known as the "well-pleaded complaint rule." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987). In other words, "[a] cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues that involve federal law." *Wright v. Gen. Motors Corp.*, 262 F.3d 610, 613 (6th Cir. 2001).

"However, an exception exists to this rule. Where Congress so completely preempts a particular area of law, the lawsuit arising under state law becomes federal in character." *Id.* More specifically, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at 393.

"29 U.S.C. § 1132(a), by providing an ERISA civil enforcement cause of action, completely preempts any state cause of action seeking the same relief, regardless of how artfully the complaint is pleaded as a state law claim." *McSharry v. Unumprovident Corp.*, 237 F. Supp. 2d 875, 881 (E.D. Tenn. 2002). So, "'[i]t is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit.'" *Smith v. Provident Bank*, 170 F.3d 609, 615 (6th Cir. 1999) (quoting *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1276 (6th Cir. 1991)). Otherwise, "'[t]he policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.'" *Id.* (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987)).

"When Congress enacted 29 U.S.C. § 1132(a), it clearly manifested an intent to make causes of action within the scope of the ERISA civil enforcement provision removable to federal court." *McSharry*, 237 F. Supp. 2d at 880–81. To this end, the "overpowering federal policy in the civil enforcement provisions [of ERISA]" has led the Supreme Court of the United States to conclude that "the civil enforcement provisions are of such extraordinarily preemptive power that they override even the 'well-pleaded complaint' rule for establishing the conditions under which a cause of action may be removed to a federal forum." *Rush Prudential HMO, Inc. v. Moran*, 536 U.S. 355, 376 (2002). Put differently, if a cause of action falls within the scope of the ERISA civil

8

enforcement provision, it arises under federal law and is removable, even if it is labeled as a state-law claim.

28 U.S.C. § 1441(a) provides for the removal of "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." So, in the instant case, the first question is whether ERISA applies to the Plan and plaintiff. If so, the second question is whether plaintiff's causes of action fall within the scope of ERISA's civil enforcement provision, making them removable pursuant to 28 U.S.C. § 1441(a) given that such causes arise under federal law within the meaning of 28 U.S.C. § 1331. Alternatively, defendants argue that this action features completely diverse parties and an amount in controversy exceeding $75,000 so as to be removable based on the original jurisdiction furnished by 28 U.S.C. § 1332(a).[2]

An ERISA "participant" is defined as

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). Because plaintiff is a former employee of defendants' predecessor who receives benefits from the Plan, he falls within this definition.

As for whether the Plan is an ERISA-governed plan, the critical document is the Plan Document, which plaintiff terms the "pension contract" [Doc. 3-1 p. 9]. 29 U.S.C. §

---

[2] While the Court agrees, the Court need not address this argument in light of its finding that this action was properly removed based on this Court's jurisdiction pursuant to 28 U.S.C. § 1331.

1102(a)(1) provides that every ERISA employee benefit plan must be written, and the Plan satisfies this requirement. And, even though plaintiff argues that ERISA is inapplicable to his claims because plaintiff and defendants had "contract and privity" before ERISA given that both his employment with defendants' predecessor and the Plan predate Congress's enactment of ERISA [Doc. 9], ERISA states that

> the terms 'employee pension benefit plan' and 'pension plan' mean any plan, fund, or program *which was heretofore or is hereafter established or maintained by an employer* or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (i) provides retirement income to employees

29 U.S.C. § 1002(2)(A) (emphasis added). Thus, ERISA is retroactive in its application to pension plans established prior to its enactment and governs the Plan, assuming the other ERISA prerequisites are met.

The Sixth Circuit has stated that the substantive inquiry into whether a pension plan is an ERISA plan requires three steps:

> First, the court must apply the so-called 'safe harbor' regulations established by the Department of Labor to determine whether the program was exempt from ERISA. Second, the court must look to see if there was a 'plan' by inquiring whether from the surrounding circumstances a reasonable person could ascertain the intended benefits, the class of beneficiaries, the source of financing, and procedures for receiving benefits. Finally, the court must ask whether the employer established or maintained the plan with the intent of providing benefits to its employees.

10

*Thompson v. Am. Home Assur. Co.*, 95 F.3d 429, 434–35 (6th Cir. 1996) (citations, quotation marks, and alterations omitted). The 'safe harbor' regulations exempt from ERISA plans that contain all four of the following characteristics:

> (1) the employer makes no contribution to the policy; (2) employee participation in the policy is completely voluntary; (3) the employer's sole functions are, without endorsing the policy, to permit the insurer to publicize the policy to employees, collect premiums through payroll deductions and remit them to the insurer; and (4) the employer receives no consideration in connection with the policy other than reasonable compensation for administrative services actually rendered in connection with payroll deduction.

*Id.* at 435 (citing 29 C.F.R. § 2510.3–1(j)). Because the Plan is funded entirely by employer contributions, it is not exempt from ERISA under these regulations. The second ERISA plan requirement is likewise satisfied because the Plan Document details the Plan's terms, benefits, beneficiaries, source of financing, and procedures, among other things, so that a reasonable person can ascertain such characteristics of the Plan. Finally, the Plan was established in 1969 for the purpose of providing retirement income to defendants' employees and has been maintained for that purpose since. Because the Plan has satisfied the Sixth Circuit's three-step inquiry as to whether a pension plan is an ERISA plan, succinctly, the Court finds the Plan is an ERISA plan.

The next question is whether plaintiff's claims fall within ERISA's civil enforcement provision, which would result in complete preemption of plaintiff's state-law claims and justify defendants' removal to this Court. ERISA's civil enforcement provision states in pertinent part: "[a] civil action may be brought . . . (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to

11

enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). As mentioned, the critical factor in this inquiry is not how the claim is labeled, "but whether in essence [the] claim is for the recovery of an ERISA plan benefit.'" *Smith*, 170 F.3d at 615 (quoting *Cromwell*, 944 F.2d at 1276).

In bringing this action, plaintiff seeks to enforce what he alleges is his right under the Plan to change his beneficiary or, if he is not permitted to change his beneficiary, to recover a monetary award that compensates for his inability to change his beneficiary. Therefore, plaintiff's claims fall within ERISA's civil enforcement provision because they are in essence attempts to recover an ERISA plan benefit by enforcing rights under the Plan. And "[a]ctions that could have been brought under § 1132 . . . are completely preempted by § 1132." *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 860 (6th Cir. 2007). Moreover, "[w]hen Congress enacted 29 U.S.C. § 1132(a), it clearly manifested an intent to make causes of action within the scope of the ERISA civil enforcement provision removable to federal court. . . . regardless of how artfully the complaint is pleaded as a state law claim." *McSharry*, 237 F. Supp. 2d at 880–81; *see also Wright*, 262 F.3d at 614 (holding that a claim "is not removable unless it is completely preempted by ERISA").

Because plaintiff's claims fall within the ERISA civil enforcement provision, ERISA completely preempts plaintiff's causes of action under the TCPA and Tennessee contract law. For this reason, defendants properly removed the instant action pursuant to

28 U.S.C. § 1441(a) because plaintiff's claims arise under federal law within the meaning of 28 U.S.C. § 1331. Consequently, plaintiff's motion to remand will be denied.

### B. Motion for Summary Judgment

Because the Court finds that it has jurisdiction over this matter and because defendants' motion for summary judgment has been fully briefed, the Court will now address that motion.

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). All facts and inferences to be drawn therefrom must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

Yet, "[o]nce the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). To establish a genuine issue as to the existence of a particular element, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  *Id.*

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the factfinder.  *Anderson*, 477 U.S. at 250.  The Court does not weigh the evidence or determine the truth of the matter.  *Id.* at 249.  Nor does the Court search the record "to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989).  Thus, "the inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  Finally, "'a plaintiff complaining that a district court granted summary judgment without allowing adequate discovery must, at a minimum, be able to show that he could obtain information through discovery that would disclose material facts.'"  *Phillips v. Anderson Cnty. Bd. of Educ.*, 259 F. App'x 842, 846 (6th Cir. 2008) (quoting *Sierra Club v. Slater*, 120 F.3d 623, 638 (6th Cir. 1997)).

Because "[a] primary purpose of ERISA is to guarantee 'the integrity and primacy of written plans,'" *Elec. Energy, Inc. v. Lambert*, 757 F. Supp. 2d 765, 770 (W.D. Tenn. 2010) (quoting *Health Cost Controls v. Isbell*, 139 F.3d 1070, 1072 (6th Cir. 1997)), "the plain language of an ERISA plan should be given its literal and natural meaning. . . . [and] federal courts may not apply common law theories to alter the express terms of

14

written benefit plans." *Id.* at 770–71. Section 1.7 of the Plan Document designates the Plan participant's "Benefit Commencement Date" as "[t]he first day of the first month for which a retirement benefit is payable to the Participant" [*Id.* at 11]. Thus, plaintiff's Benefit Commencement Date was July 1, 1996 [Doc. 10-1 ¶ 13].

Section 4.7(a) of the Plan Document mandated that "[t]o be effective, each designation or revocation [of a beneficiary] must be . . . signed and filed . . . before the Participant's Benefit Commencement Date" [Doc. 11-2 p. 37]. This restriction on beneficiary changes is based on the fact that the Plan Administrator makes its actuarial calculations as to the participant's benefit payment around the time of the Benefit Commencement Date, and consequently, allowing a participant to change his or her beneficiary based on changes in personal circumstances would cause negative actuarial results for the Plan Administrator and defendants [Doc. 10-1 ¶ 20]. Here, it is not disputed that plaintiff sought to change his beneficiary after the Benefit Commencement Date.

Plaintiff claims that he is paying each month for the right to assign his beneficiary rights to L.A.P., but he is in fact receiving a lesser amount each month because, in July 1996, he selected a benefit option under which his designated beneficiary would receive 100 percent of his monthly benefits for the remainder of her life if plaintiff predeceased her, rather than 50 percent or 66 and two-thirds percent. Moreover, plaintiff's ability to change his beneficiary is expressly limited by the terms of the Plan Document, which is entitled to primacy and must be given its literal and natural meaning. *Lambert*, 757 F.

15

Supp. 2d at 770–71. This meaning forecloses plaintiff's claims under ERISA's civil enforcement provision because plaintiff has no right to the benefits he seeks under the plain terms of the Plan. Thus, defendants are entitled to judgment as a matter of law.

In addition, "[w]hen [a] plan gives the administrator discretionary authority, [the court applies] [a] highly deferential arbitrary and capricious standard of review." *Cox v. Standard Ins. Co.*, 585 F.3d 295, 299 (6th Cir. 2009). "Under this deferential standard, when it is possible to offer a reasoned explanation, based on the evidence for a particular outcome, that outcome is not arbitrary or capricious." *Id.* In the instant matter, "[t]he Plan Document gives the Plan Administrator the power to construe the Plan and to decide all questions arising under the Plan" [Doc. 10-1 ¶ 9]. So, as long as there is a reasoned explanation for the Plan Administrator's decision to prohibit plaintiff from changing his beneficiary, that decision is not arbitrary and capricious and must be upheld. Defendants in this case have proffered such a reasoned explanation—actuarial considerations necessitate that the participant and beneficiary be fixed at the time when the participant's monthly benefit payments begin. As a result, the Court finds that the decision to deny plaintiff's request to change his beneficiary was not arbitrary and capricious, and accordingly defendants are entitled to judgment as a matter of law. Thus, the Court will grant defendants' motion for summary judgment.

### III. Conclusion

For the reasons stated herein, plaintiff's motion to remand [Doc. 9] will be **DENIED**, and defendants' motion for summary judgment will be **GRANTED**. Therefore, plaintiff's claims will be dismissed.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE